**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| V. | **DOCKET NO. 04-CR-10023** |
| **BRUCE TASSONE** | |

**DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE**

**Introduction**

  Now comes the defendant and respectfully requests that the Court consider the arguments submitted herein as an aid to the sentencing hearing scheduled before the Court for June 23, 2004. The defendant herein moves for downward departures in his base offense level and requests that the Court impose a reduced sentence. In the departure arguments the undersigned sets forth mitigating factors under the United States Sentencing Guidelines (hereinafter the "Guidelines") that serve as a justified basis for the Court to depart downwards in the base offense level affixed to the defendant in his pre-sentence report. The defendant submits attachments to this memorandum, and will defer to the Court as to whether any evidence should be heard at the sentencing hearing.

**Prior Proceedings**

  On February 23, 2004, Mr. Tassone was charged by way of information and pursuant to a plea agreement with one count of mail fraud. The defendant pleaded guilty at his first appearance in Court on February 23, 2004. He was released on conditions until sentencing. The undersigned moved to continue the first May 25, 2004 sentencing hearing because the defendant was seeking treatment at a gambling rehabilitation clinic

1

for four weeks in March and this interrupted the Probation Department's pre sentence investigation. The Probation Department (Probation Officer Martha Victoria) conducted a pre-sentence investigation and produced a pre-sentence report for the Court on May 19, 2004. The defendant's objections relate to 1) an adjustment for abuse of position of trust, 2) the defendant's criminal history calculations and, the issue of whether there exist facts sufficient for a downward departure. The defendant will address the adjustment and criminal history issues in a separate pleading. This matter is now before the Court for disposition.

## REQUEST FOR DOWNWARD DEPARTURE IN THE DEFENDANT'S BASE OFFENSE LEVEL.

The defendant requests a downward departure in his base offense level for the reasons set forth below:

### Summary of Departure Issues

Mr. Tassone respectfully requests that the Court depart downwards in his base offense level based on a combination of circumstances that are acceptable grounds for departure under *Koon v. United States*, 518 U.s. 81 (1996). The defendant moves for a departure on the following grounds:

**Encouraged Factor: Section5K2.13, Diminished Capacity.** The defendant committed this offense while "while suffering from a significantly reduced mental capacity" caused by a severe gambling addiction.

### Legal Framework and Facts in this Case  Grounds for Departure (Policy Statement)

Under 16 U.S.C. section 2553 (b) of the Guidelines, the sentencing Court may impose a sentence outside the range established by the applicable guidelines, if the Court finds that there exists an aggravating of mitigating circumstance of a kind, or to a degree,

2

not adequately taken into consideration by the Sentencing commission in formulating the Guidelines that should result in a sentence different than that described. Circumstances that may warrant departure the guidelines range pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The decision as to whether and to what extent departure is warranted rests with sentencing court on a case specific basis... Any case may involve factors in addition to those identified that have not been given adequate consideration by the commission. Presence of any such factor may warrant departure from the guidelines, under some circumstance and in the discretion of the sentencing court.

In *Koon v. United States,* the Supreme Court changed the standard of review when a district court chooses to depart. The Court also set out the analysis that should be used by the District Court in considering a departure, and analysis that had previously been articulated in the First Circuit by the then Chief of the Court Judge Stephen G. Breyer.

1) What features of this case potentially take it outside the Guidelines heartland and make it a special or unusual case?

2) Has the Commission forbidden departures based on those features?

3) If not, has the Commission encouraged departures based on those features?

4) If not, has the commission discouraged departures based on those features:

*United States v. Rivera* 994 F.2d 942.949 (1st Cir. 1993).

The Koon Court agreed with the analysis "If a factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if applicable Guideline does not already take it into account. If the factor is a discouraged factor, or an encouraged factor already taken into account b the applicable Guideline, the Court should only depart if the factor is present to an exceptional degree or in some other way that makes the case different from the ordinary case where the factor is present…If a factor is unmentioned in the Guidelines, the Court must after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole…decide whether it is sufficient to take the case out of the Guidelines heartland…" Koon. 518 U.S. at 96-97

**Departure Factors**

Under U.S.S.G. § 5K2.13, a sentencing court may give a downward departure if the defendant committed the crime "while suffering from a significantly reduced mental capacity." This departure is not available in cases where (1) the diminished capacity was caused by the defendant's voluntary use of drugs or other intoxicants, (2) there is a need to protect the public because the offense involved violence or a threat of violence, or (3) the defendant's incarceration is required to protect the public. None of these exceptions are directly relevant here.

Prior to 1998, there was a split among the circuit courts about whether the diminished capacity departure was only available to defendants who could establish that they suffered from a disorder with both a volitional and a cognitive component. *E.g. compare United States v. Hamilton*, 949 F.2d 190, 193 (6th Cir. 1991) (Compulsive gambler did not qualify for departure because he did not also have a cognitive disorder

4

that prevented him from absorbing information in the normal fashion or exercising the power of reason.) *with United States v. McBroom*, 124 F3d 533 (3d Cir. 1997) (Departure available for both cognitive impairments and volitional impairments.). In 1998, however, the Sentencing Commission settled the dispute by amending the guideline to make clear that the departure is available to defendants who suffer from *either* a volitional or cognitive disorder. The amended application note states that "'[s]ignificantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense; or (B) control behavior that the defendant knows is wrong." Definition (A), then, covers cognitive disorders, while definition (B) covers volitional disorders, such as compulsive or pathological gambling.[1]

In light of this amendment, the Sixth Circuit overruled *Hamilton* and held that sentencing courts do have the authority to grant a diminished capacity departure based on the defendant's pathological gambling. *United States v. Sadolsky*, 234 F.3d 938, 942 (6th Cir. 2000). The First Circuit, however, has upheld one district court's decision not to depart based on the defendant's compulsive gambling. *United States v. Harotunian*, 920 F.2d 1040, 1044 (1st Cir. 1990). The Court noted, in *dicta*, the sentencing court's reasoning:

> [E]ven if the appellant did suffer from a gambling addiction . . ., the guidelines' general purpose of deterrence would be ill served by discounting appellant's sentence on this basis. After all, the [sentencing] court noted, such a dependence would be akin to drug or alcohol addiction— considerations to which the Sentencing Commission assigned little weight.

---

[1] "Pathological gambling" is defined as a mental disorder by the DSM-IV. "The essential feature of Pathological Gambling is persistent and recurrent maladaptive gambling behavior . . . that disrupts personal, family, or vocational pursuits." § 312.31.

5

*Id.* at 1047, citations omitted. This opinion is from before 1998, when the diminished capacity guideline was amended; however, it does not cite the cognitive/volitional distinction.

In a post-1998 decision, Judge Gertner noted, in *dicta*, that sentencing courts have the authority to consider compulsive gambling as the grounds for a downward departure. *United States v. Iaconetti*, 59 F.Supp. 139, 146 (D.Mass. 1999). According to Judge Gertner, "[f]or a claim of diminished capacity, attributable to compulsive gambling, to succeed, the defendant must show: 1) that he suffered from a pathological gambling disorder which 2) resulted in a significantly reduced mental capacity 3) causally connected to the commission of the charged offense." *Id.*, citing United States v. Harris, 1994 WL 683429, *1 (S.D.N.Y 1994), *aff'd*, 79 F.3d 223 (2d Cir. 1996).

### 1. Is Pathological Gambling Akin to Drug or Alcohol Addiction?

As noted above, the diminished capacity guideline specifically states that the departure is not available in cases where the defendant's diminished capacity was caused by his voluntary use of drugs or other intoxicants. § 5K2.13. Some courts and commentators have asserted that compulsive gambling is akin to drug or alcohol addiction, and, therefore, the departure should not be available to defendants whose diminished capacity was caused by compulsive gambling. *E.g. United States v. Rosen*, 1991 WL 24386 at *2 (S.D.N.Y. 1991); Justin W. Starr, Diminished Capacity Departures for Compulsive Gambling: Punishing the Pathological or Pardoning the Common Criminal?, 2003 B.Y.U.L.Rev. 385, 414-15 (2003). The First Circuit's statements in *Harotunian*, which are quoted above, seem to be sympathetic with this argument. 920 F.2d at 1044.

The strongest counterargument is that the specificity with which the Sentencing Commission drafted the guideline indicates that it intended only to take the diminished capacity departure away from defendants whose diminished capacity stemmed from their voluntary use of drugs or other intoxicants. The language used is very precise. It covers not all drug or intoxicant use but only *voluntary* use. And it was written carefully to cover the use of a wide range of substances—any that could be classified as drugs or intoxicants. The use of such precise language indicates that the Commission did not intend to prohibit the departure for all cases where the diminished capacity was caused by something that can be characterized as an addiction. The Sixth Circuit made a very similar point in *Sadolsky*:

> [I]n § 5K2.13, the Sentencing Commission specifically excluded as bases for departure two volitional disorders, "the voluntary use of drugs or other intoxicants," § 5K2.13, and clearly indicated in the accompanying application note that volitional impairments provide a proper basis for departure. Therefore it must be presumed that the Sentencing Commission did not intend to categorically exclude gambling or other volitional disorders as qualifying for downward departures.

234 F.3d at 944.

Furthermore, as one commentator has noted, "[t]hat the Commission has not modified the Guideline to explicitly account for gambling, as it has in light of other court decisions bearing upon the appropriateness of departure, is also indicative of the commission's acceptance of gambling as a potential basis for departure." Lawrence S. Lustberg, Sentencing the Sick: Compulsive Gambling as the Basis for a Downward Departure Under the Federal Sentencing Guidelines, 2 Seton Hall J. Sport L. 51, 68 (1992).

### 2. Must Prove Causation

In order to receive a diminished capacity departure, the defendant must establish that his disorder is causally connected to the commission of the charged crime. The Courts are not in agreement, however, about what kind of causation is required. While at least one Court has held that diminished capacity due to pathological gambling can only result in a downward departure where the underlying crime is a gambling offense, *United States v. Carucci*, 33 F.Supp.2d 302 (S.D.N.Y. 1999), the majority of circuit courts have adopted a much more permissive approach. The *Sadolsky* court, in holding that the defendant could receive a downward departure where his diminished capacity was caused by compulsive gambling, stated that "§ 5K2.13 does not require a direct causal link between the [significantly reduced mental capacity] and the crime charged." 234 F.3d at 943. The court cited several other cases agreeing with this position, including the Ninth Circuit's opinion in *United States v. Cantu*, 12 F.3d 1506, 1515 (9th Cir. 1993), which explained that "the disorder need be only a contributing cause, not a but-for cause or a sole cause, of the offense."

The First Circuit seems to agree that this is the correct position. In *United States v. Lauzon*, 938 F.2d 326, 331 (1st Cir. 1991), cert. denied, 502 U.S. 972 (1991), the Court stated:

> [Section] 5K2.13 does not require that the reduced mental capacity be the "but-for" or "sole" cause of the offense. The key words of the section are: "a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense . . ." This means, as we interpret it, that the reduced mental capacity of a defendant must have contributed to *some* extent to the commission of the offense.

### 3. How to Prove Diminished Capacity

There are no clear-cut guidelines for what evidence must be produced at the sentencing hearing to justify a diminished capacity departure. The case law does offer some guidance, though.

In *Sadolsky*, the defendant offered his own testimony and his wife's testimony about his compulsive gambling. He also offered testimony from a member of Gamblers Anonymous (GA) about his own experiences with a gambling disorder, his participation in GA, and his role as the chairperson of GA's weekly meetings. The defendant also cited the DSM IV's definition of pathological gambling. 234 F.3d at 940. The Court would have preferred expert testimony but concluded that this evidence was sufficient: "Although testimony from a medically trained professional who was qualified to diagnose gambling disorders would have been preferable, . . . the trial court did not err in finding that Sadolsky was a compulsive gambler who qualified for a downward departure under § 5K.13 based on [the GA member's] testimony, the medical reference evidence, and the lack of contradictory evidence." *Id.* at 945, citations omitted.

In *United States v. Roach*, 296 F.3d 565, 571 (7th Cir. 2002), the defendant offered statements about the defendant's compulsive shopping from several doctors who had examined her. She also introduced evidence about the nature of her shopping binges and activities related to the binges. *Id.* The sentencing court granted a diminished capacity departure, but the Seventh Circuit reversed, holding that the defendant offered insufficient evidence at the sentencing hearing to support the judge's conclusion. *Id.* at 572. According to the Court, the doctors' statements offered evidence that she suffered from reduced mental capacity in relation to her shopping but did not support the

9

contention that she suffered from a significantly reduced mental capacity when she committed the charged offense, embezzling. A defense expert did offer his opinion that she had a reduced mental capacity when she committed the crimes, but he offered "no explanation of the reasoning behind his conclusion." This "naked conclusion about [the defendant's] mental state at the time of the offense is therefore entitled to little, if any, weight." *Id.*

In *United States v. Checoura*, 176 F.Supp.2d 310, 312 (D.N.J. 2001), the defendant presented testimony from the executive director of the Compulsive Gambling Center, who was also a certified clinical mental health counselor. She testified that the defendant suffered from a "serious pathological gambling disorder that, when active, drives her to do anything possible to obtain money to indulge her gambling habit." *Id.* She also testified that, in her opinion, "it was the need to subsidize her vast betting losses that 'directly and substantially' led [the defendant] to begin stealing money from her employer." *Id.* The sentencing court concluded that this expert's "testimony was more than sufficient to establish that [the defendant] had significantly less capacity to resist her gambling-related urges that the ordinary person, or, indeed, the ordinary pathological gambler." *Id.*

As these cases indicate, there is no clear rule about what evidence is required for a sentencing court to conclude that a defendant is entitled to a reduced capacity departure.

**Departure Request**

The Offender characteristics and the personal and biographical information contained in pages 16 through 28 of the pre sentence report accurately state the defendant's personal history. In addition, the undersigned draws the Courts attention to

correspondence provided to the Court by Doctor Ducharme and Furstenberg. The Court should note that there are several support letters from family members, friends and a letter from the defendant himself. The undersigned relies on this information in support of this request for downward departure.

These facts clearly establish that the defendant suffered greatly from a gambling addiction. The record evidence shows that the defendant spent literally millions of dollars gambling over the past several years. The evidence shows also that the defendant spent scores of nights living and staying at casinos in Connecticut and Nevada. There is also abundant evidence that the defendant made efforts to treat and cure his gambling problems prior to his offense conduct and commission of the instant offense.

The undersigned argues that the defendant is clearly entitled to serious consideration for a departure pursuant to 5K2.13. The above stated case law and argument permits departure on this basis for diminished capacity caused by a gambling addiction. Clearly this gambling addiction was a central cause for his offense conduct. The undersigned notes that the defendant worked for a previous employer at the same type position he held at Bright Horizons. At a time when he was not gambling as heavily, the defendant appeared to be a model employee and one who could be trusted to perform any service without concern for pilfering the company's tills. This is evidence that supports the defendant's argument that during his tenure with Bright Horizon's his gambling addiction became so acute that it literally took control of him such that he continued to steal while knowing that it was wrong. His gambling addiction was so severe that it caused this reduced mental capacity and clearly caused and contributed

greatly to the commission of these crimes. The gambling described in the pre sentence report and in letters was both pathological and compulsive.

The undersigned will suggest orally at the sentencing hearing a reduction in his base offense level that is appropriate under the circumstances of this case and the defendant's condition.

## CONCLUSION

The defendant respectfully requests that the Court depart downwards in his base offense level and impose a significantly reduced sentence of incarceration. The defendant will address the specific departure and sentence recommendation at the time of his sentencing hearing.

Respectfully submitted,
**BRUCE TASSONE,**
By his lawyer,

6/10/04
Date

L. H.
_____
**WILLIAM KEEFE**
**BBO # 556817**
One McKinley Square, Third Floor
Boston, MA 02109
Telephone (617) 399-1570
Facsimile (617) 723-1710

12

## CERTIFICATE OF SERVICE

I, William Keefe, hereby certify that I delivered a copy of the attached Motion for Downward Departure, was sent to John Mitchell, Assistant United States Attorney, at his offices at the Office of the United States Attorney, United States Courthouse, 1 Courthouse Way, Suite 9200, Boston, MA 02210

Dated: 6/9/04

_L. H_
William Keefe