UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Cr. No. 04-10023-MEL |
| | ) |
| BRUCE A. TASSONE | ) |

FILED
IN CLERKS OFFICE
2005 FEB 11 A 9:23
U.S. DISTRICT COURT
DISTRICT OF MASS.

## OPPOSITION TO DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

The Court should deny the defendant's motion for downward departure because 1) "gambling addiction" is not a recognized basis for a diminished capacity departure in the First Circuit; and 2) even if it were, the defendant has not demonstrated that his gambling habit actually caused him to embezzle more than a half-million dollars from his employer. Excusing a theft of this magnitude on the ground that the defendant was driven by an urge to gamble would invite wildly disparate sentences in embezzlement cases, which typically involve defendants who succumb to an urge to steal as a way of supporting any number of compulsions, including gambling. Moreover, it would validate as a sentencing factor an addiction that some believe is not an addiction at all, and that others liken to drug and alcohol addictions, which themselves are impermissible sentencing factors. The Court should not go down that road.

I.  **Backgound**

On February 23, 2004, Bruce Tassone pleaded guilty to an information charging him with one count of mail fraud in connection with his embezzlement of $658,979 from his employer, Bright Horizons Family Solutions, Inc., a publicly traded, Watertown-based corporation that purports to be the country's largest provider of child day care services.  Tassone was Bright Horizon's Vice President of Construction and Facilities, a position in which he oversaw all of the construction projects at the company's day care facilities.  Tassone was able to steal money from Bright Horizons by exploiting his budget approval authority.  With the help of another family member, he set up a phony Florida construction corporation and fabricated false invoices in the company's name for construction work.  He would "approve" payment on the invoices, which ranged in the tens of thousands of dollars.  Bright Horizons in turn would send a check to the construction company's address of record.

The pre-sentence report in this case states that the defendant's total offense level is 23, and his criminal history category is III, yielding a sentencing range of 57-71 months. The defendant has moved pursuant to Section 5K2.13 of the Sentencing Guidelines, "Diminished Capacity," for a downward departure, contending that he committed wire fraud while suffering from a "significantly reduced mental capacity."  The

Application Note to this guideline explains that "significantly reduced mental capacity" means that the defendant had a "significantly impaired ability to . . . control behavior that the defendant knows is wrongful." The defendant contends that even though he knew stealing was wrong, a persistent gambling addiction drove him to embezzle hundreds of thousands of dollars from his employer.

This Court should reject his motion because "gambling addiction" is not a recognized ground for departure in the First Circuit, and even if it were, the defendant has not submitted sufficient evidence that his gambling habit actually caused him to steal.

## II. Gambling Addiction is Not a Ground For Departure

In the First Circuit, gambling addiction is a prohibited ground for departure. In United States v. Harotunian, 920 F.2d 1040, 1047 (1st Cir. 1990), the Court of Appeals upheld the district court's (Wolf, J.) rejection of the defendant's departure motion on the grounds of gambling addiction where the district court reasoned that "the guidelines general purpose of deterrence would be ill served by discounting appellant's sentence on this basis . . . . such a dependence [on gambling] would be akin to drug and alcohol addiction - considerations to which the Sentencing Commission assigned little weight." United States v. Harotunian, 920 F.2d 1040, 1047 (1st Cir. 1990).

Tassone attempts to distinguish <u>Harotunian</u> on the grounds that the Sentencing Commission later amended guideline section 5K2.13, the diminished capacity guideline, by removing the requirement that the defendant prove that his impairment was both cognitive and volitional in nature. <u>See</u> Defendant's Motion for Downward Departure ("Dep. Mot.") at 6. Tassone maintains that gambling addiction is only a volitional disorder, and as such the amendment to the diminished capacity guideline effectively supercedes <u>Harotunian</u>. Yet this argument fails to address the basis on which the First Circuit rejected a gambling addiction departure in <u>Harotunian</u>, namely because of the similarities between gambling addiction and drug and alcohol addiction, which are impermissible departure grounds under Section 5H1.4, and because recognizing gambling or other impulsive addictions might lead to disparate sentencing. <u>See</u> <u>Harotunian</u>, 920 F.2d at 1047. The holding had nothing to do with whether the defendant had demonstrate the existence of both cognitive and volitional impairments.

Tassone goes on, however, (<u>see</u> Dep. Mot. at 8), to cite an opinion in which this district court (Gertner, J.) maintained that <u>Harotunian</u> did not rule out gambling addiction departures in the First Circuit. <u>See</u> <u>United States v. Iaconetti</u>, 59 F. Supp.2d 139, 145 (D. Mass. 1999). Rejecting, without explanation, the notion adopted by the district court and First Circuit in

4

Harotunian that gambling addiction is similar to drug or alcohol addiction, the court held that a departure would be appropriate where a defendant demonstrates "1) that he suffered from a pathological gambling disorder which 2) resulted in a significantly reduced mental capacity 3) causally connected to the commission of the charged offenses. Id. (citing United States v. Harris, 1994 WL 683429, *1).

Any ambiguity in section 5H1.3 about whether the inclusion of drug and alcohol addiction as prohibit departure grounds encompasses gambling addiction, however, was resolved by the Sentencing Commission. In 2003, the Commission amended the guideline to make perfectly clear that gambling addiction is not a legitimate departure ground: "*Addiction to gambling is not a reason for a downward departure.*" (emphasis added). Although this policy statement became effective after the date of the offense of conviction in this case, it supports the notion that the First Circuit got it right in Harotunian in concluding that the Commission meant to include gambling addiction with drug and alcohol addiction as prohibited departure grounds.[1]

To recognize a departure ground that the Commission explicitly has rejected would invite disparate sentencing in

---

[1] Because of the Supreme Court's recent decision in United States v. Booker, 2005 WL 50108 (January 12, 2005), in which the guidelines were rendered advisory in nature, the Court may consider this amendment in interpreting the diminished capacity guideline without running afoul of the ex post facto clause.

embezzlement cases, which involve a class of offenders that commonly claim to have been motivated by compulsions ranging from gambling to extramarital affairs. Moreover, the notion that compulsive gambling is an uncontrollable addiction that can cause individuals to commit crime hardly is settled in the scientific community. See Justin W. Starr, Diminished Capacity Departures for Compulsive Gambling: Punishing the Pathological or Pardoning the Common Criminal?, 2003 B.Y.U.L.Rev. 385, 411-416 (2003) (discussing psychological effects of gambling in the context of guideline departures). To recognize gambling addiction as a departure factor where universally recognized addictions to drug and alcohol are impermissible factors, would be to thwart the Commission's intent. For these reasons, this Court should deny the defendant's motion.

### III. Tassone Has Failed to Prove His Gambling Caused Him to Steal

Even if the Court rules as a matter of law that a gambling addiction departure is available to defendants whose offenses took place before the effective date of the 2003 amendment to section 5H1.3, Tassone has not proved he is entitled to one. His argument glosses over the language of the Application Note to Section 5K2.13, which requires the defendant to prove, in the case of a volitional disorder, that he a "significantly impaired ability . . . control behavior he knew was wrong." The defendant's argument neglects to address how his excessive

6

gambling habit, which he characterizes as an addiction without the support of expert report,[2] caused him to be unable to resist the urge to steal.

His argument rests on the Sixth Circuit's decision in United States v. Sadolsky, 234 F.3d 938 (6th Cir. 2000), in which the court held that the defendant must prove a direct causal link between his gambling addiction and the offense. See Dep. Mot. 7-8. Under this theory, it is enough that the defendant prove merely that the addiction creates a motive to steal. See Sadolsky, 234 F.3d at 943. Under Sadolsky, the line of reasoning is thus: I gamble; therefore, I need money; therefore, I steal.

The problem with this approach of course is that it hardly distinguishes between those who steal out of an addiction-based compulsion and those who lack the moral will not to steal. Simply because an addiction to gambling created a need for money that motivated him to steal does not mean, without more, that the gambling *caused* him to steal. As the Seventh Circuit observed in a case in which the defendant moved for a departure based on a shopping addiction, "understanding the defendant's motive does not necessarily reveal anything about the defendant's mental capacity at the time of the offense." United States v. Roach,

---

[2] The Court will note from the pleadings in this case that the government attempted for months to obtain an expert report from the defendant in this case. In fact, the Court continued the sentencing hearing twice so that the defendant could produce an expert report. In the end, the report was never produced.

7

296 F.3d 565, 570 (7th Cir. 2002). After all, there are, sadly, many people who gamble far beyond their means, who nevertheless successfully resist the urge to steal to support the habit. As one insightful law review article analyzing the gambling addiction departure put it, "the difference [between gamblers who steal and those who do not] could be one of morality, not compulsion." Justin W. Starr, Diminished Capacity Departures for Compulsive Gambling: Punishing the Pathological or Pardoning the Common Criminal?, 2003 B.Y.U.L.Rev. 385, 402 (2003).

Accordingly, a court would need to know something about the gambler's mental state before concluding that an addiction prevented him from controlling his behavior. In this case, the evidence Tassone has submitted leaves us guessing. He has failed to submit the sorts of evidence that one would expect in support of a diminished capacity motion. Above all, he has proceeded to sentencing without the report of an examining expert. Nor has he submitted medical records during the period in which the offense took place. Rather he has submitted records of treatment he received after he had been charged in this case.

This incomplete record raises more questions than it answers. Chief among them is why Tassone, an admitted life-long gambler, was able to refrain from stealing throughout his life until he arrived at Bright Horizons where he yielded wide discretion to approve large construction invoices? If he stole

from Bright Horizons because he was presented with an easy opportunity, then we are dealing with a moral failure rather than a mental disorder. The evidence before the Court does not even begin to lend an answer either way.

Tassone's gambling habits have caused harm to himself and his family. For this, he is worthy of sympathy, and, more importantly, treatment. But like any other crime, the offense for which Tassone stands convicted was committed out a motive. The existence of this motive alone does not excuse his conduct unless he demonstrates that it actually rendered him incapable of resisting what he knew to be wrong. See United States v. Grillo, 2003 WL 22999219 (S.D. N.Y. 2003) (rejecting a gambling addiction departure and noting that "[d]efendants charged with a wide variety of crimes might seek downward departures because they were, for example, compulsive shoppers who turned to stealing, running a house of prostitution, or insider trading, among other crimes, only after spending their assets"). Because Tassone has failed to prove this connection, the Court should deny his motion.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Assistant U.S. Attorney

9

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

    William Keefe, Esq.
    One McKinley Square, 3rd Floor
    Boston, Massachusetts 02109


This 11th day of February, 2005.

_____
JONATHAN F. MITCHELL
ASSISTANT UNITED STATES ATTORNEY